# In the United States District Court for the Southern District of Georgia Brunswick Division

EDWARD SHANE LUCAS,

    Plaintiff,

    v.

RYAN MULCAHY,

    Defendant.

2:24-CV-6

## ORDER

Before the Court are Plaintiff's motion for summary judgment, dkt. no. 37, and Defendant's motion for summary judgment, dkt. no. 39. The motions have been thoroughly briefed and are ripe for review. Dkt. Nos. 37, 39, 42, 43, 44, 45, 48. For the reasons stated below, Defendant's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

## BACKGROUND

Six years ago, Defendant Ryan Mulcahy, a Long County Sheriff's Deputy, pulled over Plaintiff Edward Shane Lucas's vehicle in Ludowici, Georgia, on March 21, 2019. Dkt. Nos. 37, 39-15 ¶ 12. Pursuant to this traffic stop, Defendant arrested Plaintiff for driving under the influence. Dkt. No. 39-5 at 7. While on the scene, Defendant and two other law enforcement officers searched Plaintiff's vehicle and found a green leafy substance as well as

a white powdery substance, which later tested positive for marijuana and methamphetamine, respectively. Id. ¶¶ 4, 7–9, 18.[1]

Plaintiff faced a five-count criminal indictment in the Superior Court of Long County, Georgia.[2] Dkt. No. 39-8. On January 25, 2022, Plaintiff pled guilty to misdemeanor failure to maintain lane, and the court entered a nolle prosequi on the remaining counts. Dkt. No. 39-12. In his case before this Court, Plaintiff alleges that the Long County Sheriff's Office "subjected [Plaintiff] to multiple instances of unlawful and unconstitutional instances of law enforcement abuse." Dkt. No. 15 ¶ 3. According to Plaintiff, this action is premised upon the "unprovoked unlawful stop, seizure, and arrest based upon the lack of arguable cause on the evening of March 21, 2019" resulting in Plaintiff's criminal prosecution. Id.

## I.   Plaintiff's Failure to Controvert Defendant's Statement of Material Facts

Before turning to the detailed facts, the Court first addresses Plaintiff's failure to directly respond to Defendant's

---

[1] These two law enforcement officers are non-defendants; one was a Georgia State Patrol Trooper, and the other was a Long County Sargent First Class. Dkt. Nos. 39-1 at 31, 48:4–8, 39-5 at 8.
[2] The five charges were (1) felony possession of a controlled substance, in violation of O.C.G.A. § 16-13-30(a); (2) misdemeanor possession of marijuana, less than one ounce, in violation of O.C.G.A. § 16-13-30(j); (3) misdemeanor failure to maintain lane, in violation of O.C.G.A. § 40-6-48; (4) misdemeanor driving under the influence of THC, methamphetamine, and amphetamine, in violation of O.C.G.A. § 40-6-391; and (5) misdemeanor driving with an expired license, in violation of O.C.G.A. § 40-5-20(a).

statement of material facts. Dkt. Nos. 39-15, 45, 46. As both parties move for summary judgment, they must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute." S.D. Ga. L.R. 56.1. The facts set forth in that statement "will be deemed to be admitted unless controverted by a statement served by the opposing party." Id. Plaintiff failed to directly dispute most of the facts contained in Defendant's statement of material facts. Dkt. Nos. 45, 46. Therefore, the Court deems those undisputed facts admitted.[3] See White, 2024 WL 200924, at *1 ("Put simply, if a plaintiff does not directly dispute the facts set forth in a defendant's statement of material facts, the Court deems those facts admitted."); Thomas v. Elixir Extrusion LLC, No. 5:18-cv-11, 2019 WL 2664987, at *1 (S.D. Ga. June 27, 2019) ("Because Plaintiff has not responded, pursuant to Local Rule 56.1, the facts as stated in Defendants' [statement of material facts] are deemed admitted for the purpose of considering Defendants' [motion for summary judgment]." (citing S.D. Ga. L.R. 56.1)).

---

[3] That Plaintiff is proceeding *pro se* does not alter the Court's analysis. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (A *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); White v. Champion Home Builders, Inc., No. 5:22-cv-73, 2024 WL 200924, at *1 (S.D. Ga. Jan. 18, 2024) ("Plaintiff's status as a *pro se* litigant does not alleviate his burden to respond to Defendant's statement of material facts." (citations omitted)).

Even though Plaintiff has admitted most of Defendant's proffered facts, his response attempts to refute Defendant's stated reason for initiating the traffic stop, that is, Plaintiff argues Defendant's explanation is unsupported by the body camera footage. See Dkt. Nos. 45, 46. Because Plaintiff generally refutes that he swerved off the roadway before the traffic stop, the Court does not deem this fact admitted. See Dkt. No. 39-15 ¶ 8. Withal, the Court has reviewed the record evidence and ensured each fact is supported. See Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) ("[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." (quotations omitted)); United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) ("The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted[] but must ensure that the motion itself is supported by evidentiary materials." (citations omitted)).

## II.  The Traffic Stop

### A. Defendant Initiated the Stop.

Just before 8:00pm on March 21, 2019, Plaintiff began driving home from his mother's house. Dkt. No. 39-1 at 7, 24:11-18. After approaching a four-way stop at the same time, Defendant, in his patrol vehicle, turned and followed Plaintiff. Id. at 9, 26:17-

25. In the few minutes during which Defendant drove behind Plaintiff, Defendant allegedly observed "the right side of [Plaintiff's] vehicle kicking dust and gravel up, which led [Defendant] to believe that [Plaintiff swerved] off the roadway." Dkt. No. 39-2 at 3, 17:18-21. According to Plaintiff, he was driving normally and did not swerve off the road. Dkt. No. 37 at 2, 5.[4] Then, Defendant purportedly ran the license plate number for Plaintiff's vehicle and discovered that Plaintiff's license was expired and that Plaintiff's vehicle registration was suspended. Dkt. No. 39-2 at 16, 70:6-20. Thereafter, Defendant activated his vehicle's blue lights and pulled Plaintiff over in the parking lot of the Country Store in Ludowici, Georgia. Dkt. No. 39-3 at 1:09-1:50.

**B. Defendant Investigated Plaintiff for Driving Under the Influence ("DUI").**

After instructing Plaintiff to stay in his truck, Defendant approached Plaintiff's driver-side window and immediately stated, "Man, you about smoked that tree back there, my friend," referring

---

[4] The parties agree that the body camera footage does not show Plaintiff leaving the roadway. Dkt. Nos. 37 at 6, 39-2 at 3, 17:22. Defendant responds that he never "claimed the video showed Plaintiff leaving the road and almost striking a tree, rather, that was [Defendant's] own observation" in real time. Dkt. No. 43 at 2. Plaintiff argues that the footage does not show it because it did not happen. Dkt. No. 37 at 2. Plaintiff supposes that the stop was pretextual because Defendant wanted to find "evidence associated with unlawful night-hunting." Id. at 3. As explained below, this factual dispute is immaterial.

to his observation of Plaintiff swerving off the roadway. Id. at 2:12–2:15. Plaintiff responded that he was talking on the phone. Id. at 2:20–2:22. Defendant testified that he smelled marijuana coming from Plaintiff's truck from the very beginning of the stop. Dkt. No. 39-2 at 16–17, 70:21–71:13.

Plaintiff handed Defendant his driver's license and acknowledged that it was expired. Dkt. No. 39-3 at 2:30–2:33. After asking Plaintiff a few questions, Defendant told Plaintiff that he noticed that Plaintiff's eyes were bloodshot and glazed over. Id. at 2:33–2:47. Defendant asked Plaintiff to exit his truck, and Plaintiff complied. Id. at 3:01–3:16.

Defendant then asked Plaintiff when he last smoked marijuana in the vehicle, and Plaintiff responded that it had been a long time. Id. at 3:20–3:24. At this point, Defendant also informed Plaintiff that his registration was suspended. Id. at 3:30–3:38. Defendant expressed concern about Plaintiff's sobriety and asked if Plaintiff would agree to perform the field sobriety tests to ensure his safety to operate a motor vehicle. Id. at 5:07–5:18. Plaintiff replied, "Not really, but I will." Id. at 5:18–5:21. Plaintiff also asked whether he would be free to go if he passed the tests; Defendant responded, "Absolutely." Id. at 5:22–5:28. Plaintiff then stated he had one drink earlier in the evening about two hours before the stop. Id. at 6:20–6:25.

Defendant then administered five field sobriety tests. Id. at 6:25–13:42, Dkt. Nos. 39-5 at 8, 39-13 at 3–4. First, Defendant conducted a horizontal gaze nystagmus test.[5] Dkt. No. 39-3 at 6:51–8:59. From this test, Defendant observed a lack of smooth pursuit in Plaintiff's eyes and nystagmus at maximum deviation and concluded that four of the six clues indicating impairment were present. Dkt. No. 39-13 at 3. Second, Plaintiff performed the walk-and-turn test.[6] Dkt. No. 39-3 at 9:16–10:31. During this test, Defendant determined that Plaintiff started too soon, raised his arms, and improperly turned and concluded that three of the eight clues indicating impairment were present. Dkt. No. 39-13 at 3–4. Third, Plaintiff completed the one-leg stand test.[7] Dkt. No. 39-3 at 10:32–11:49. During this test, Defendant observed Plaintiff sway and raise his arms and concluded that two of the four clues

---

[5] Nystagmus is the involuntary jerking of the eye and can occur as a result of impairment by depressants, inhalants, or dissociative anesthetics. Walsh v. State, 811 S.E.2d 353, 355 (Ga. 2018). In Georgia, a correctly performed horizontal nystagmus test is generally admissible as a basis for an officer's determination of a driver's impairment. Id. at 359 (citation omitted).

[6] The walk-and-turn test requires the subject to walk in a straight line and turn around; it is a "physical dexterity exercise" that allows the officer to use his or her "common sense [and] common experience" to assess the suspect's impairment and ability to follow instructions. Mullady v. State, 606 S.E.2d 645, 647 (Ga. Ct. App. 2004).

[7] Similar to the walk-and-turn test, the one-leg stand test simply allows the officer to assess the common physical manifestations of impairment by asking the suspect to balance on one leg without lifting his or her arms. State v. Smith, 765 S.E.2d 787, 790 (Ga. Ct. App. 2014).

indicating impairment were present. Dkt. No. 39-13 at 4. Fourth, Defendant conducted another eye test in which he asked Plaintiff to follow, with his eyes, a light to the bridge of Plaintiff's nose; Defendant observed a lack of convergence in Plaintiff's eyes. Dkt. No. 39-3 at 11:59–12:38, 39-13 at 4. Fifth, and finally, Defendant administered a Romberg balance test.[8] Dkt. No. 39-3 at 12:39–13:42. Defendant noticed that Plaintiff estimated twenty-four seconds to be thirty seconds and swayed back and forth. Dkt. No. 39-13 at 4. Defendant also noted that Plaintiff experienced eyelid tremors and body tremors. Id.

## C. Defendant Placed Plaintiff Under Arrest & Searched His Vehicle.

Immediately following the field sobriety tests, Defendant placed Plaintiff under arrest for driving under the influence. Dkt. No. 39-3 at 13:43–13:50. Plaintiff offered to take a breathalyzer test but refused to consent to chemical testing of his blood. Id. at 13:51–15:47. Defendant informed Plaintiff that he planned to search Plaintiff's vehicle incident to his arrest. Id. at 16:35–16:50. Defendant further explained he believed Plaintiff was under the influence of alcohol and drugs. Id.

---

[8] A Romberg test usually involves assessing the suspect's balance while he or she stands unassisted with closed eyes, leans his or her head back, and estimates the passage of thirty seconds. Sears v. Bradley, 667 F. Supp. 3d 1344, 1362 (M.D. Ga. 2023).

Defendant escorted Plaintiff to the back of his patrol car. Id. at 17:15–17:39. Defendant and two other law enforcement officers, who arrived during the sobriety tests, then searched Plaintiff's vehicle. Id. at 21:52–1:17:17. The deputies and the trooper found two containers filled with a green leafy substance. Dkt. No. 39-5 at 8. They also located a folded-up dollar bill containing a white powdery substance in Plaintiff's wallet. Id.

After the search, Defendant transported Plaintiff to the Long County Sheriff's Office. Id. at 8–9. Defendant submitted a search warrant application for Plaintiff's blood, which the Magistrate Judge granted at 10:15 p.m. that very night. Dkt. No. 39-13 at 5. After Plaintiff's blood was drawn, Plaintiff was processed and booked at the neighboring Liberty County Jail. Dkt. No. 39-5 at 9.

### III. Plaintiff's Resultant Criminal Prosecution

Two days later, an investigator for the Long County Sheriff's Office tested the drugs found in Plaintiff's truck. Id. ¶¶ 6–12. The green leafy substance tested positive for Tetrahydrocannabinol Delta-9 ("THC"). Id. ¶¶ 7–9. The white powdery substance inside the dollar bill initially tested positive for the presence of cocaine, but the GBI later determined that it was methamphetamine. Id. ¶¶ 11, 18.

After conducting these tests, the investigator submitted arrest warrant applications to charge Plaintiff with possession of a controlled substance and possession of marijuana. Id. ¶ 13. The

investigator submitted sworn affidavits and testimony to support the warrants; he relied on Defendant's incident report to support "how the drugs were discovered." Id. The Magistrate Judge issued the arrest warrants, held Plaintiff's First Appearance hearing, and set his bond the same day. Id. ¶¶ 15–16. Defendant did not help test the drugs, assist in preparing the arrest warrant, urge or persuade the prosecuting officer to seek the warrant, or attend Plaintiff's First Appearance hearing. Id. ¶ 17. Two days later, on March 25, 2019, Plaintiff posted his bond and was released from custody. Dkt. No. 39-7 at 1.

A few months later, on June 20, 2019, the Georgia Bureau of Investigation returned Plaintiff's blood toxicology report, revealing that Plaintiff's blood tested positive for THC, methamphetamine, and amphetamine. Dkt. No. 39-14. On August 11, 2020, Plaintiff was formally indicted for (1) felony possession of a controlled substance, in violation of O.C.G.A. § 16-13-30(a); (2) misdemeanor possession of marijuana, less than one ounce, in violation of O.C.G.A. § 16-13-30(j); (3) misdemeanor failure to maintain lane, in violation of O.C.G.A. § 40-6-48; (4) misdemeanor driving under the influence of THC, methamphetamine, and amphetamine, in violation of O.C.G.A. § 40-6-391; and (5) misdemeanor driving with an expired license, in violation of O.C.G.A. § 40-5-20(a). Dkt. No. 39-8. Plaintiff challenged the

search of his truck in the state criminal proceeding, but the court denied his motion to suppress. Dkt. No. 39-11 at 40.

Plaintiff and the prosecutor negotiated a plea deal for a recommended sentence of twelve years' probation to terminate upon payment of a fine in exchange for Plaintiff pleading guilty to the failure-to-maintain-lane charge. Dkt. No. 39-12 at 4. The court approved the negotiated plea and sentence recommendation. Id. at 6. Accordingly, on January 25, 2022, Plaintiff pled guilty to misdemeanor failure to maintain lane, and the court entered a nolle prosequi on the remaining four counts. Dkt. No. 39-12.

### IV.  Plaintiff's Present Case

Plaintiff filed this civil rights action on January 11, 2024. Dkt. No. 1. Plaintiff initially labeled his claim as only a Fourth Amendment violation brought under 42 U.S.C. § 1983. Id. ¶ 11; see also id. ¶ 3 (Plaintiff alleging he was subjected to an "unprovoked unlawful stop, seizure, and arrest"). Facing a motion to dismiss for untimeliness, however, Plaintiff moved to amend his complaint to clarify that he intended to bring a § 1983 malicious prosecution claim. Dkt. No. 8. The Court granted this motion, and Plaintiff so amended. Dkt. Nos. 14, 15. Nevertheless, Plaintiff continues to challenge his arrest and characterize his claims as "malicious prosecution and false arrest." Dkt. No. 49 ¶ 6. Both Plaintiff and Defendant now move for summary judgment. Dkt. Nos. 37, 39.

11

**LEGAL AUTHORITY**

## I.  Summary Judgment

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in [his] pleadings. Rather, [his] responses . . . must set forth specific facts showing that there

is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

The Court views the record evidence "in the light most favorable to the [nonmovant]," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and draws all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255.

## II.  Cross Motions for Summary Judgment

When there are cross-motions for summary judgment, "the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each." Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, 83 F.4th 922, 926 (11th Cir. 2023). After doing this, if there is no genuine issue of material fact, then summary judgment may be entered if one party is entitled to judgment as a matter of law. Id. It should be noted that cross-motions for summary judgment "'may be probative of the nonexistence of a factual dispute[,]'" but it "'does not automatically empower the court' to enter summary judgment for one party." Id. (quoting Ga. State Conf. of NAACP v. Fayette Cnty., 775 F.3d 1336, 1345 (11th Cir 2015), then quoting La Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983) (alterations adopted)). The filing of cross motions for summary judgment does not alter the Rule 56 standard. See 3D Medical Imaging Sys., LLC v. Visage Imaging, Inc.,

228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017); Westport Ins. Corp. v.
VN Hotel Grp., LLC, 761 F. Supp. 2d 1337, 1341 (M.D. Fla. 2010).

**DISCUSSION**

Both parties move for summary judgment. Plaintiff argues that
he is entitled to judgment as a matter of law because Defendant
"clearly lacked objective probable cause to make the arrest and
the ensuing criminal prosecution and liability that followed."
Dkt. No. 37 at 1, 20.

Defendant argues that Plaintiff's claim is barred by
qualified immunity because Defendant "did not violate Plaintiff's
Fourth Amendment right to be free from an unreasonable seizure as
a result of a malicious prosecution." Dkt. No. 39 at 3.
Specifically, Defendant asserts, as a threshold matter, that he
was not the officer who brought the allegedly malicious prosecution
against Plaintiff. Dkt. No. 39 at 15–19. Defendant further argues
that Plaintiff provides no evidence that a constitutional
violation occurred. Id. at 19–24.

### I. Qualified Immunity Framework

Qualified immunity shields officers engaged in discretionary
functions from civil liability. Nolin v. Isbell, 207 F.3d 1253,
1255 (11th Cir. 2000) (citing Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982)). Qualified immunity allows "government officials to
carry out their discretionary duties without the fear of personal

liability or harassing litigation." Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003) (citation omitted).

To receive the benefit of qualified immunity, Defendant must first establish that he was "engaged in a 'discretionary function' when he performed the acts of which [Plaintiff] complains." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263–64 (11th Cir. 2004) (quoting Harlow, 457 U.S. at 818). Discretionary functions are those that fall "within the employee's job responsibilities," and a government employee engages in a discretionary function when he (1) performs "a legitimate job-related function" (2) in an authorized manner. Id. at 1265. Defendant described himself as a "road deputy" at the time of the incident. Dkt. Nos. 37-1 at 8:13-16, 37-4 at 6, 5:20-22. Traffic stops and consequent arrests of impaired drivers are legitimate, authorized functions of a road deputy's job responsibilities. See Valentine v. Robinson, 601 F. App'x 778, 781 (11th Cir. 2015) (concluding that "the general act of arresting a suspect is clearly part of Defendants' job-related powers and responsibilities" (citing Holloman, 370 F.3d at 1266)). Thus, Defendant has established that he was engaged in a discretionary function when he arrested Plaintiff.[9]

---

[9] Plaintiff does not dispute that Defendant acted within his discretionary authority. Dkt. Nos. 37, 44-46.

Because Defendant acted within his discretionary authority, Plaintiff must present evidence overcoming qualified immunity. Holloman, 370 F.3d at 1264 (citing Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003)). To do so, Plaintiff must show (1) that Defendant "violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)). Qualified immunity protects Defendant from civil liability if Plaintiff fails either prong of the analysis. Underwood v. City of Bessemer, 11 F.4th 1317, 1328 (11th Cir. 2021).

Nevertheless, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002). Here, because the Court holds that Plaintiff's claim falls markedly short of a cognizable constitutional violation, the Court does not address whether the constitutional right involved was clearly established.

## II.  False Arrest or Unlawful Seizure Claim[10]

---

[10] Recognizing that district courts in the Eleventh Circuit have allowed plaintiffs to proceed on claims for unlawful seizures pursuant to Terry or traffic stops separate and distinct from false arrest claims, the Court's analysis applies equally to either theory of liability. See, e.g., Davis v. Edwards, No. 3:16-CV-855-CDL-DAB, 2018 WL 1535485, at *2 (M.D. Ala. Mar. 29, 2018), aff'd, 779 F. App'x 691 (11th Cir. 2019); Conner v. City of Centerville, No. 5:21-CV-55 (CAR), 2024 WL 1335184, at *7-8 (M.D. Ga. Mar. 28, 2024); see also Rodriguez v. United States, 575 U.S. 348, 354 (2015) (Courts analyze police officers' decision to initiate

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990)). Plaintiff has not clearly brought a false arrest claim. Dkt. Nos. 15 ¶ 1, 37 ¶ 1 (characterizing the claim as a malicious prosecution claim). Nevertheless, a plaintiff proceeding *pro se* is entitled to a "less stringent standard" than is a lawyer, and the Court must construe his claims liberally, no matter how "inartfully pleaded." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).[11]

Plaintiff focuses nearly all of his briefing on the substance of a false arrest claim—specifically, why the traffic stop and resulting warrantless arrest, rather than his prosecution, were without probable cause—and makes passing references to a false arrest claim. Dkt. Nos. 15 ¶¶ 3 ("This action is premised upon a third (3rd) unprovoked unlawful stop, seizure, and arrest based upon the lack of arguable cause on the evening of March 21, 2019 . . . ."), 10–11 ("An arrest without probable cause and/or

traffic stops under the Terry v. Ohio, 392 U.S. 1 (1968), framework.).

[11] Nevertheless, the Court emphasizes that it cannot act as a *pro se* plaintiff's advocate and, importantly, only has the power to decide cases and controversies *properly presented* to it. Sec'y, Fla. Dep't of Corr. v. Baker, 406 F. App'x 416, 421–22 (11th Cir. 2010).

arguable cause is unconstitutional, per a Section 1983 action . . . By arresting the Plaintiff without any probable and/or arguable cause, the Defendant is not entitled to qualified immunity . . . ."), 49 ¶ 7(Plaintiff describing "[his] claims of malicious prosecution *and* false arrest" (emphasis added)).

Thus, it is prudent to briefly address why Plaintiff's claim would fail even under the cloak of false arrest. "All constitutional claims brought under § 1983 are subject to the statute of limitations governing personal injury actions in the state where the § 1983 action was brought." Harvey v. Daniels, 625 F. App'x 499, 501 (11th Cir. 2015) (citing McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008)). In Georgia, this limitations period is two years. O.C.G.A. § 9-3-33; Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987) (holding that "the proper limitations period for all Section 1983 actions in Georgia is the two-year limitations period set forth in O.C.G.A. § 9-3-33."). Because "[a] claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process," "[t]hese claims accrue when either the seizure ends *or* the plaintiff is held pursuant to legal process." Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir 2020) (emphasis added) (citing Wallace v. Kato, 549 U.S. 384, 388-89 (2007)).

Defendant arrested Plaintiff and transported him to the Liberty County Jail on March 21, 2019. Dkt. No. 39-5 at 7-9.

Plaintiff became "detained pursuant to legal process" on March 23, 2019, the date of the issuance of the formal arrest warrant and Plaintiff's First Appearance Hearing. Dkt. Nos. 39-6, 39-7. Thus, at the latest, the limitations period expired on March 23, 2021—two years after Plaintiff's detention pursuant to legal process. Wallace, 549 U.S. at 397; Dkt. No. 39-5 ¶¶ 13-16. Plaintiff brought this action on January 11, 2024, which falls well outside the limitations period. Dkt. No. 1.

This is consistent with the general rule that "for a § 1983 action, the statute begins to run from the date the facts supporting a cause of action are apparent or should be apparent to the plaintiff." Smith v. Mitchell, 856 F. App'x 248, 249 (11th Cir. 2021) (citing Brown v. Georgia Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)). Put simply, Plaintiff's claims arising from (1) Defendant's reasonable suspicion, or lack thereof, to initiate the traffic stop and (2) Defendant's probable cause, or lack thereof, to execute the warrantless arrest involve facts known to Plaintiff on March 21, 2019.[12] Plaintiff has not made any tolling argument nor does the Court see any reason for

---

[12] Plaintiff's two factual contentions are (1) that he did not fail to maintain his lane and (2) that he did not smell like alcohol. Dkt. No. 37 at 11. Being that Plaintiff does not dispute that he was the driver present for the police interaction, these facts were known to Plaintiff on March 21, 2019. See id. Indeed, Defendant articulated these two reasons for initiating the stop and conducting the sobriety tests. See, e.g., Dkt. No. 39-3 at 2:12-2:15, 6:20-6:30.

the limitations period to be tolled. Therefore, any claim for false arrest is time-barred.[13]

### III. Malicious Prosecution Claim

"To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010) (citations omitted).

First, the elements of the common law tort of malicious prosecution are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Paez v.

---

[13] Of note, the malicious prosecution claim is not time-barred because "the favorable-termination requirement [for a malicious prosecution claim] functions as a rule of accrual." Laskar v. Hurd, 972 F.3d 1278, 1292 (11th Cir. 2020) (citing Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir. 1998), abrogated on other grounds by Williams v. Aguirre, 965 F.3d 1147, 1159 (11th Cir 2020); Whiting v. Traylor, 85 F.3d 581, 585-86 (11th Cir. 1996), abrogated on other grounds by Wallace, 549 U.S. at 389-90). Here, Plaintiff pled guilty to the charge of failure to maintain lane on January 25, 2022, and his remaining charges were nol prossed; this is the alleged favorable termination of the criminal case. Dkt. No. 39-12 at 1-6. Thus, the two-year statute of limitations required that his claim be brought by January 25, 2024. Plaintiff filed this lawsuit on January 11, 2024 and thus is within the limitations period for a malicious prosecution claim. Dkt. No. 1.

Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (quoting Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003)).

Second, to overcome the Fourth Amendment hurdle in this context, Plaintiff "must prove that he suffered a seizure pursuant to legal process that violated the Fourth Amendment." Laskar, 972 F.3d at 1284. "To meet this burden, a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." Williams, 965 F.3d at 1165. "A Fourth Amendment violation involving these seizures occurs 'when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.'" Id. at 1158 (quoting Manuel v. City of Joliet, Ill., 580 U.S. 357, 367 (2017)). "In these situations, legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." Id. (alteration adopted) (internal quotation marks omitted).

"Because the Fourth Amendment protects against searches and seizures (and not prosecutions)," Laskar, 972 F.3d at 1292, a malicious prosecution claim "requires a seizure 'pursuant to legal process.'" Williams, 965 F.3d at 1158. There are two potential seizures on the record before the Court. The Court holds that the undisputed facts show that Plaintiff's claim fails as a matter of law regardless of which seizure he relies upon.

### A. Seizure on Possession Charges

Plaintiff was seized for two days following his First Appearance Hearing before he posted bond.[14] Defendant argues that because another officer, who is not Defendant, had at this point obtained an arrest warrant for the possession charges, that officer's conduct defeats the malicious prosecution claim against Defendant.[15]

Generally, "arresting officers will not be responsible for the continuation of the prosecution because the prosecutor (or some other factor) will break the causal link between defendants' conduct and plaintiff's injury." Whiting, 85 F.3d at 586 n.10 (citations omitted). If, however, "the officers intentionally provided materially false statements to support the arrest warrant that justified at least part of that seizure," then, a malicious prosecution claim against the arresting officer may stand. Williams, 965 F.3d at 1167. That is exactly Plaintiff's argument here.

---

[14] The seizure pursuant to the Plaintiff's warrantless arrest falls under a false arrest claim because this seizure was without legal process. See Williams, 965 F.3d at 1158. Plaintiff does not allege and the record does not show that Plaintiff was detained between the date he posted bond and the date he was sentenced to a non-custodial sentence.

[15] This argument concerns two elements of a malicious prosecution claim: (1) whether Defendant instituted or continued the prosecution and (2) whether Defendant's conduct caused the allegedly illegal seizure pursuant to legal process. Laskar, 972 F.3d at 1284; Whiting, 85 F.3d at 586 n.10.

Plaintiff argues that Defendant provided false statements related to Plaintiff driving off the road before the stop and "fabricated false [probable cause] grounds" to perform the field sobriety tests during the stop. Dkt. No. 37 at 11. This argument fails because these two alleged falsehoods are wholly independent of issuance of the arrest warrant for drug possession.

The record is devoid of evidence demonstrating that any statements relating to Plaintiff's driving before the stop or the field sobriety tests affected the arrest warrants for drug possession. Instead, the record shows that the prosecuting officer relied on Defendant's report only to support "how the drugs were discovered" and establish the possession element. Dkt. No. 39-5 ¶ 14. In other words, the prosecuting officer relied on Defendant's report only to establish that Plaintiff was the one driving the truck in which the drugs were found, and the deputies and the trooper discovered them in a search incident to arrest. Id. This has nothing to do with the initial reason for the stop or the suspicion underlying the decision to conduct field sobriety tests.

The prosecuting officer then testified to the preliminary testing of the drugs found in the truck. Id. The green leafy substance tested positive for THC; the powdery white substance tested positive for the presence of cocaine. Id. ¶¶ 7–9, 11. It is undisputed that Defendant did not help test the substances, assist in preparing the arrest warrant, urge or persuade the prosecuting

officer to seek the warrant, or attend Plaintiff's First Appearance hearing. Id. ¶ 17. Therefore, the warrant's probable cause determination was predicated on the prosecuting officer's initial positive test results of the drugs, not on any allegedly false statements made by Defendant. Id. ¶¶ 7–14.

When viewing the Fourth Amendment seizure as the seizure pursuant to the arrest warrant, Plaintiff must show that Defendant provided "materially false statements *to support the arrest warrant*." Williams, 965 F.3d at 1167 (emphasis added); see also Laskar, 972 F.3d at 1296 (To prevail against an officer "who did not apply for the warrant," the plaintiff must establish that officer "intentionally or recklessly made misstatements or omissions *necessary to support the warrant*." (emphasis added) (citation omitted)). In short, the warrant rests on Defendant's incident report only to establish that Plaintiff possessed the drugs; the prosecuting officer's testimony to the Magistrate Judge did not turn on the contention that Plaintiff swerved off the roadway or failed the sobriety tests. See Dkt. Nos. 39-5 at 14–17.

The Eleventh Circuit unequivocally rejected Plaintiff's fruit-of-the-poisonous-tree argument in Black v. Wigington, 811 F.3d 1259, 1269 (11th Cir. 2016). Once a non-defendant officer applies for a warrant predicated on independent probable cause, "[i]t *does not matter* whether that evidence was discovered in

24

compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police officers." Id. (emphasis added). Thus, Plaintiff's malicious prosecution claim fails as a matter of law because Defendant did not provide "materially false statements to support the arrest warrant" underlying the seizure for possession of a controlled substance and marijuana. Williams, 965 F.3d at 1167.

**B. Warrant to Take Plaintiff's Blood**

The seizure to take a compulsory blood sample may be the requisite Fourth Amendment encroachment for a malicious prosecution claim. See Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008), abrogated on other grounds by Williams, 965 F.3d at 1158; see also Schmerber v. California, 384 U.S. 757, 767 (1966) (A compulsory blood test "plainly involves the broadly conceived reach of a search *and* seizure under the Fourth Amendment" (emphasis added)). It is undisputed that Defendant obtained the warrant to take Plaintiff's blood sample on the evening of March 21, 2019. Dkt. No. 39-1 at 44, 96:8–9. Plaintiff argues this warrant was "forcibly obtained by the Defendant against the Plaintiff to take his blood." Dkt. No. 37 at 18.

Even assuming that the compulsory blood sample is the underlying seizure, Plaintiff's claim still fails. The undisputed facts show that Defendant had probable cause to seize Plaintiff's sample. The very "existence of probable cause defeats a § 1983

malicious prosecution claim." Grider, 618 F.3d at 1257 (citations omitted); Williams, 965 F.3d at 1163 (reaffirming Grider's holding that an officer may be held liable for malicious prosecution "only after [the Court concludes] that the defendant's warrant affidavit lacked probable cause").

"Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'" Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006) (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). In a § 1983 case, qualified immunity is appropriate "so long as there was *arguable* probable cause." Windham v. City of Fairhope, 597 F. App'x 1068, 1071 (11th Cir. 2015) (emphasis in original) (citing Durruthy, 351 F.3d at 1089). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could* have believed that probable cause existed to arrest." Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010) (emphasis added) (internal quotation marks omitted). "Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Grider, 618 F.3d at 1257 (citations omitted).

In this case, Defendant must have had probable cause to believe that Plaintiff committed an offense for which the results of Plaintiff's blood sample would constitute evidence. The warrant affidavit and application state that Defendant suspected Plaintiff committed either "DUI Alcohol" or "DUI Drugs." Dkt. No. 39-13 at 2. Likewise, throughout the body-camera footage, Defendant states he suspected Plaintiff of "drugs and alcohol." Dkt. No. 39-3 at 16:50–51, 18:23–25; see also Dkt. No. 39-5 at 8 (Defendant's incident report states that "[Defendant] believed [Plaintiff] to be under the influence of a combination of drugs and alcohol.").[16]

The undisputed facts show that Defendant noticed Plaintiff's eyes looked bloodshot and glazed over and told him as much within the first thirty seconds of their interaction. Dkt. No. 39-3 at 2:45–47. Defendant then conducted five field sobriety tests.[17] Dkt.

---

[16] This is important because Plaintiff continuously argues that Defendant's observations amounting to probable cause should be negated because the sample eventually revealed Plaintiff's blood alcohol content was zero. Dkt. No. 37 at 12, 18. This argument does not ameliorate probable cause for DUI of alcohol because "[p]robable cause is based on what a reasonable officer would think at the time of arrest—not on what they could understand with the benefit of hindsight." United States v. Leonard, 4 F.4th 1134, 1146 (11th Cir. 2021) (citing Florida v. Harris, 568 U.S. 237, 249 (2013)). It has no bearing on probable cause for DUI of drugs.

[17] Plaintiff passingly states that Defendant "forced an involuntary 6-minute Horizonal Gaze field sobriety test upon the Plaintiff." Dkt. No. 37 at 11. Yet, on the undisputed body camera footage, Defendant states "I am going to conduct some tests on you to ensure you're safe to operate a motor vehicle. Do you agree to doing some tests?" Dkt. No. 37-3 at 5:13–5:18. Plaintiff states "Not really, but I will." Id. at 5:18–5:20. At the summary judgment stage, where a clear "video obviously contradicts Plaintiff's version of the

No. 39-13 at 3-4. According to the horizontal gaze nystagmus test, Defendant observed a lack of smooth pursuit in Plaintiff's eyes and nystagmus at maximum deviation. <u>Id.</u> at 3. Plaintiff also demonstrated a lack of convergence in his eyes and suffered from eyelid tremors, which indicate drug use. Dkt. No. 39-2 at 19-20, 73:5-74:10. Plaintiff also showed signs of impairment during the modified Romberg test by waiting twenty-four seconds, instead of thirty, and swaying forward and backward. <u>Id.</u> Plaintiff has not presented any evidence that Defendant performed these sobriety tests incorrectly or misinterpreted the results.

Later, in the video, after finding marijuana in the search incident to arrest, Defendant states, he "smelled a hint of it" earlier and the other deputy replies, "I did too when I walked up here." Dkt. No. 39-3 at 22:23-28. In summary, Defendant's observation of Plaintiff's bloodshot eyes, the field sobriety tests, and the smell of marijuana support Defendant's probable cause determination. The undisputed body camera footage is

---

facts," the Court must "accept the video's depiction instead of Plaintiff's account." <u>Pourmoghani-Esfahani v. Gee</u>, 625 F.3d 1313, 1315 (11th Cir. 2010); <u>see also</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380-81 (2007) (When viewing the light in favor of the nonmovant would have required the Court to rely on "visible fiction," the Court "should have viewed the facts in the light depicted by the videotape."). Plaintiff's slight equivocation before agreeing to perform the tests does not amount to coercion by Defendant. <u>See</u> <u>Ammons v. State</u>, 880 S.E.2d 544, 551 (Ga. 2022) (holding that the right against compelled self-incrimination applies to field sobriety tests). Thus, the Court rejects this fleeting involuntariness argument.

consistent with Defendant's account of the traffic stop. See id.
The Court holds, as a matter of law, probable cause supported the
warrant for Plaintiff's blood sample to test for drugs.

No matter the lens through which the seizure pursuant to legal
process is viewed, Plaintiff fails to establish a constitutional
violation. Thus, the Court holds that Defendant is entitled to
summary judgment.

**CONCLUSION**

Qualified immunity bars Plaintiff's § 1983 malicious
prosecution claim against Defendant because Plaintiff has
presented no evidence establishing a constitutional violation.
Accordingly, Defendant's motion for summary judgment is **GRANTED**,
dkt. no. 39, and Plaintiff's motion for summary judgment is **DENIED**,
dkt. no. 37. There being no claims remaining, the Clerk is **DIRECTED**
to **CLOSE** this case.

**SO ORDERED** this 29th day of April, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA